**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAJOR JASON SCHAFER** | : | |
| Plaintiff | : | |
| | : | **CIVIL ACTION NO**.: |
| v. | : | |
| | : | |
| **CITY OF ALLENTOWN, MAYOR** | : | |
| **RAY O'CONNELL (FRMR) &** | : | |
| **HR DIRECTOR MELONEY SALLIE-** | : | |
| **DOSUNMU (FRMR)** | : | **JURY TRIAL DEMANDED** |
| Defendants | : | |
| | : | |

## COMPLAINT

### I.   INTRODUCTION

1.      Plaintiff, Major Jason Schafer ("Jason Schafer", "Major Schafer" or "Plaintiff"), brings this action under the ***Uniformed Services Employment and Re-Employment Act, 38 U.S.C. 4301 – 4333 ("USERRA")***, the ***Pennsylvania Military Leave of Absence Act, 51 PA Cons. Stat. § 7301 et. seq. (2015) ("PMAA"), Wrongful Termination under PMAA, Section 1983*** and the ***14th Amendment of the U.S. Constitution*** and seeks all appropriate remedies available to Major Schafer against any and all Defendants where such remedies are permitted including back pay, front pay, other economic damages, compensatory and punitive damages, pension losses due to fraudulent and/or negligent misrepresentations, declaratory and injunctive relief, interest, costs (including expert witness fees), liquidated damages, negative tax consequence damages and attorney's fees.

### II.   JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to *28 U.S.C. §§ 1331, 1367, 1343 and 42 U.S.C. § 1985.*

3.      The unlawful acts and practices of the Defendants were committed at the direction of the Defendants within the Commonwealth of Pennsylvania, Lehigh County.

4.      Servicemembers who believe that they have been victims of employment discrimination based on their military service may file a complaint with the United States Department of Labor or file their own lawsuit in federal or state court.

5.      This matter is timely as *USERRA* does not have a statute of limitations and it expressly precludes the application of any state or Commonwealth statute of limitations. *20 CFR § 1002.311*. All other claims asserted herein are within any applicable statute of limitations.

III.    **PARTIES**

6.      Plaintiff, Major Jason Schafer, is a resident of Northampton County, Pennsylvania and a current member of the PAANG (hereinafter defined).

7.      Defendant, City of Allentown (the "City"), is located in Lehigh County and maintains its principal municipal offices at 435 Hamilton St, Allentown, PA 18101.

8.      Defendant, Mayor Ray O'Connell (frmr), a resident of Lehigh County, was the acting Mayor for the City from March 29, 2018 through January 3, 2022, during and for the time period affecting all events relevant to the subject matter described herein.

9.      Pursuant to the City of Allentown, Home Rule Charter, Chapter C, Article III, Section 308, Powers and Duties of the Mayor ("Home Rule Charter" or "City Charter") Defendant O'Connell was charged with, was responsible for, and for all intents and purposes, did in fact exercise his decision-making authority over the hiring and firing of all City municipal employees, including Major Schafer. Please see Attached **Exhibit A**.

10.     Defendant, Human Resources Director, Meloney Sallie-Dosunmu (frmer) ("HR Director" or "Director Sallie-Dosunmu"), was nominated August 2018 and was the acting Human Resources Director, Risk & Safety for the City during and for the time period affecting all relevant

events described herein. Upon information and belief, HR Director Sallie-Dosunmu *resigned* Thursday July 28, 2022.

**IV.    FACTUAL BACKGROUND**

11.  Major Schafer began working with the City in July 2010 as a TIS Operations Manager which position he successfully maintained through October 2019 at which time he became a Network Manager. Major Schafer held the position of Network Manager through May 2021.

12.  Major Schafer has exhibited nothing but exemplary performance throughout his tenure.

13.  Beginning June 18, 2015, through present, Major Schafer has continuously served as a Commissioned Officer in the United States Military – The Pennsylvania Air National Guard ("PAANG") which is a reserve component of the United States Air Force as well as an integral part of the Commonwealth that the Governor can order to duty in response to Homeland Defense missions, among others.

14.  Major Schafer serves as a Medical Service Corps Officer with an additional duty as the Officer In Charge of the Base Honor Guard.  In his duties as both a Medical Service Corps Officer and Base Honor Guard OIC, Major Schafer has participated in both Federal (Title 10 U.S.C.) and PA Commonwealth (Title 32 U.S.C.) legally protected periods of service.

15.  From time to time, pursuant to mandatory orders given by the United States Military – Air Force, Major Schafer is required to report for military duty for the joint purposes of both providing and receiving on-going professional developmental and military readiness training.

16.  During the period starting June 18, 2015, through the day the City abruptly terminated his employment, Major Schafer was ordered to military duty, away from his family and job with the City, on fourteen (14) occasions, spanning a total of 478 days.

17. Major Schafer's military duty was above and beyond the normal reserve weekend duty periods and during a period of high operational tempo when the United States military was supporting numerous domestic and overseas contingency operations, necessitating the further need and requiring Major Schafer to honor his commitment.

18. While working for the City, in November of 2018, Major Schafer took his mandatory Military Leave of Absence to go on Active Duty for the United States Military - Air Force, pursuant to the following Orders:

> *Effective date of active duty is 25 Nov 2018. Individual is directed to proceed to n/a. Report to commander of organization assigned, not later than 2018/11/25 0730. Failure to report within prescribed time limits will place the member in AWOL status. Thirty-one days after reporting AWOL status, the member will be placed in deserter status IAWAFI 36-2911, Desertion and Unauthorized                                    Absence.*

19. Major Schafer returned in October of 2019 and upon returning to the City from his military leave, he learned that he had been ***demoted and replaced*** by non-military employee Mr. John Clawson ("Mr. Clawson"). Mr. Clawson was allegedly hired as "Infrastructure Manager".

20. Upon information and belief, the current Network Manager, Mr. Ricardo Maldonado, hired to replace Major Schafer in his most recent position prior to being terminated by the City, is not currently serving in uniform as a member of a military reserve component.

21. Upon further information and belief, Mr. Clawson was hired *specifically* to and did ultimately assume Major Schafer's job duties and responsibilities held by Major Schafer immediately upon taking his leave of absence.

22. Based on publicly available, objective information, intending no disrespect towards Mr. Clawson, Major Schafer is significantly and substantially more qualified for the position than his counterpart hired to replace Major Schafer.

23. It's no secret that there is a tremendous difference in both academic pedigree and actual, real-world experience between Major Schafer and Mr. Clawson, creating a clear inference of discriminatory and retaliatory bias against Major Schafer, an actively serving military member *because of* his service, proving too *inconvenient* for the City to protect Major Schafer's rights.

24. Additionally, upon returning from his Military Leave in October 2019, Major Schafer was pending orders one month later, on or about November/December 2019, serving his country through the end of December 2019, pursuant to the following Orders:

> **This period of service is ordered under 10 USC 12301(d) and is to fulfill additional training requirements determined and certified in writing by the Secretary concerned, to be necessary for professional development, or for completion of skill training or retraining.**

25. While away from the City, his family and friends serving his country and having recently returned from his previous orders only to learn that he had been demoted as a result, Major Schafer suffered a traumatic brain injury.

26.  On or about April 2020, Major Schafer was called again to serve his country and the Commonwealth, requiring him to take another leave of absence to volunteer for the Covid-19 Response Mission due to his military profession through the Pennsylvania Air National Guard. These Orders required a total of 41 days, after which Major Schafer duly returned to his employment with the City.

27. Following the above-referenced service, in September 2020, Major Schafer received Orders requiring an additional military leave of absence for a period of only one (1) week after which he again duly returned to work for the City.

28. Most recently, on or about April or May 2021, Major Schafer gave early notice to the City of pending Orders beginning early June 2021.[1]

29. Upon providing the above-described notice of leave to the City, which leave was specifically for the purpose of attending training to perform **Military Funeral Honors**, an integral part of his Wing Honor Guard OIC duties, Major Schafer was promptly terminated on May 24, 2021.

30. After 11 years of dedicated and high-performing service to the City, while balancing his obligations as a Commissioned Officer in the United States Military – United States Airforce and the Air National Guard of the Commonwealth of Pennsylvania, Major Schafer was terminated by the City of Allentown *because of* Major Schafer's military service.

31. Further, not only was Major Schafer fired immediately upon and in retaliation for providing notice of pending orders requiring additional leave to serve this Commonwealth and his Country, afforded none of the due process rights to which he is entitled as a government employee holding a property interest in his job, in clear violation of the Home Rule Charter, but instead, Major Schafer was called into the Assistant Police Chief's office, handed a termination letter and physically escorted out of the building by the Human Resources Director as if it were *his* actions that were criminal.

---

[1] Major Schafer's first set of orders were scheduled to begin on May 24 but were amended due to Covid restrictions, necessitating changing the away period from a 24 May to June 7 start date, both of which were promptly and duly presented to the City.

32. Importantly, during his entire tenure with the City, Major Schafer *never once* received *any* form of written discipline, let alone even a verbal warning, for violating *any* City rules, policies, or procedures whatsoever.  Pursuant to the Home Rule Charter, as described further below, the City has a Progressive Discipline policy in place which is regularly used and in which Major Schafer participated in connection with the discipline of other City employees, however, no such due process was afforded Major Schafer.

33. Adding insult (or retaliation) to further injure Major Schafer, Major Schafer's termination occurred just one (1) year shy of his pension voluntary vesting (12 years) in the City Pension. Please see Attached **Exhibit B** City of Allentown Municipal Employee Pension Plan Agreement, dated January 21, 1998 (the "Pension Plan").

34.  When Major Schafer spoke with HR Director Sallie-Dosunmu regarding both his options and obligations as they related to the Pension, she assured Major Schafer that based upon *his* personal circumstances into which she had personally looked, he was *required* to withdraw any and all Pension contributions that had been accumulated to-date because he did *not* "rate the pension".

35. HR Director Sallie-Dosunmu, working in the Human Resources industry for the majority of her professional career, most recently several years with the City, further demonstrated her intentions to have Major Schafer withdraw his pension by personally following up with and sending the Pension funding withdrawal forms to Major Schafer's personal residence to be executed immediately and submitted in order to begin the withdrawal process.

36. Due to the significance of taking such action as instructed and encouraged by HR Director Sallie-Dosunmu, Major Schafer, on his own accord, personally contacted the Pennsylvania Municipal Retirement System ("PMRS") directly for a further opinion after conducting his

own research to confirm HR Director Sallie-Dosunmu's suggestion was in fact in his best interest and only option available.

37. Upon contacting PMRS directly, Major Schafer learned that he ***had*** in fact rated a pension from the City based upon the terms of the Pension Plan.

> "***A member who has been involuntarily terminated after eight (8) years of credited service or who has separated voluntarily after twenty (20) years of credited service may retire early.  Benefits will be actuarially reduced for each year or partial year thereof that early retirement takes place prior to age fifty five (55)." Section 5 of the Pension Plan "Early Retirement"***

38. Upon discovering his rights for himself under the Pension Plan from PMRS, after unsuccessfully first seeking resolution through his attorney, Major Schafer personally sent a public letter to the Mayor, City Controller, and City Counsel respectfully requesting that the City honor and simply process his recent Pension application sent electronically to the City on April 26, 2022 by PMRS, which as of the date of Major Schafer's request and public cry for help, the City had continued to ignore.

39. To be clear, prior to sending the letter referenced above, Major Schafer made several attempts through various means to discover accurate information regarding his Pension and the appropriate way to process it and was repeatedly ignored by the City.

40. Upon information and belief, the portion of Major Schafer's application "Part F" required to process his pension request is exceptionally small and would take even a non-HR professional, *i.e.*, an administrative staff worker with zero knowledge of the process, merely a few minutes to complete.

41. Major Schafer's Pension income payments should have begun as soon as immediately after his unlawful termination and would have had he not intentionally been misled by the HR

Director. The delays in receiving Major Schafer's Pension income as a direct consequence of the delay caused by the City, resulted in the loss of several months of Pension income from which Major Schafer and his family could have benefitted and to which he was and remains entitled, including any harms affecting him as a direct consequence.

42. Ironically, upon learning he was being set up to withdraw Pension funds clearly against his better financial interest, HR Director Sallie-Dosunmu was nowhere to be found to simply process the paperwork sent from the Commonwealth.

43. The conscious decision and action and/or lack thereof, further demonstrating the City's intentions, to *not* take what would otherwise be a routine action, required to be performed in the ordinary course of business to process Major Schafer's certification of his Pension application, is clearly retaliatory and punitive in nature.

44. Aside from the City's behavior being illegal, to intentionally engage in such behavior towards an actively serving member of the United States and the Commonwealth of Pennsylvania armed forces *because of* his service *and* further asserting his rights not to be discriminated against *because of* such service, the City's actions were also just ungrateful, unpatriotic and extremely disappointing to say the least.

45. Even when Major Schafer attempted to "go quietly", he was given a final "parting gift" of being lied to and intentionally misled about his right and ability to collect his Pension benefits to support his family to which he was duly entitled pursuant to the executed Pension Plan Agreement signed by the Mayor, City Controller, Pennsylvania Attorney General, and the PMRS Chief Counsel.

46. Major Schafer's military service and assertion of his rights (and obligation frankly) to serve his country and the Commonwealth were the sole reasons for Major Schafer's termination.

V.    **CLAIMS**

**COUNT I**

*USERRA* **&** *PMAA* **- DISCRIMINATION**
**(as to the City of Allentown, Mayor O'Connell (frmr) and HR Director Melony Sallie-**
**Dosunmu (frmr))**

47. Paragraphs 1 through 46 are incorporated by reference as if fully set forth herein.

48. *USERRA* prohibits "discrimination against persons because of their service in the uniformed services." *38 U.S.C. § 4301(a)(3)*. Under the Act [a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation. *38 U.S.C. § 4311(a)*.

49. An employer violates *USERRA* if "***the person's membership [in the military] is a motivating factor in the employer's action***." *38 U.S.C. § 4311(a)*(emphasis added). The Pennsylvania Military Leave of Absence Act provides similar protection to service members called to military duty. *51 P.S. § 7309*.

50. In a nonpresidential [sic] opinion, the *Third Circuit* has held "under PMAA's very terms, we believe PMAA should be interpreted in conformity with USERRA, and we will apply the same two-step burden-shifting framework to claims brought under PMAA as we do to claims under *USERRA. Murphy v. Radnor Twp.*, 542 F. App'x 173, 180 (3d Cir. 2013).

51. *USERRA* establishes a two-step burden-shifting framework. First, the plaintiff must show that the "'***employee's military service was a substantial or motivating factor in the adverse employment action***.'" *Murphy*, 542 F. App'x at 176 (emphasis added) (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)). To avoid liability, the

employer must prove that it would have taken the same action absent the plaintiff's military service. *Id*.

52. Major Schafer's military service was not only a substantial or motivating factor, but in fact was the sole factor for his termination. Defendants cannot raise any reasonable or legitimate facts demonstrating that they would have taken the same action absent Major Schafer's military service.

53. In *Staub v. Proctor Hosp*., 131 S. Ct. 1186, 1191 (2011) (reversing summary judgment for the defendant) the *Supreme Court* considered whether the discriminatory motive by one of the employer's agents qualified as a motivating factor in the employer's decision to terminate. In *Staub*, one of the plaintiff's immediate supervisors exhibited antimilitary animus by scheduling him for additional shifts to "pay back the department for everyone else having to bend over backwards to cover his schedule for the Reserves," told a co-worker his "military duty had been a strain on the department," and asked the co-worker to help "get rid of him." *Id*. at 1189 (internal quotations and alterations omitted). The plaintiff was terminated after one of his supervisors reported that he violated a term of a corrective action plan, and his employer relied on this report in deciding to terminate him. *Id*. at 1189. The Court held "***that if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA***." *Id*. at 1194 (emphasis added) ("An employer's authority to reward, punish, or dismiss is often allocated among multiple agents. The one who makes the ultimate decision does so on the basis of performance assessments by other supervisors.").

*Pension Benefits*

54. *USERRA* also provides expanded pension rights for employees on military leave. *USERRA* requires that a re-employed veteran must be treated as not having incurred any break in service for purposes of the employer's pension plan. In accordance with this mandate, effective December 17, 2009, the Pension Benefit Guaranty Corporation ("PBGC") guarantees defined benefit pension plan benefits for participants serving in the military at the time their pension plan terminates.  As long as the service member is reemployed within the time limits set by *USERRA*, even if the reemployment occurs after the plan's termination date, *PBGC* will treat the participant as having satisfied the reemployment condition as of the termination date. This change applied retroactively to reemployments under *USERRA* initiated on or after December 12, 1994. Additionally, periods of military service must be considered as service with an employer for vesting and benefit accrual purposes. Employers are required to make, on behalf of employees returning from military leave, any pension contributions that the employer would have made if the employee had not been absent due to military leave.

55. For contributory plans, which offer benefits only where the employee makes contributions, employees returning from military leave must be given three times the period of the absence to make up missed contributions (not to exceed five years). Under these types of pension plans, an employer is only required to make matching contributions to the extent that a returning employee makes the required contribution to the plan. Employer contributions to a pension plan that are not dependent on employee contributions must be made within 90 days following reemployment or when contributions are normally made for the year in which the military service was performed, whichever is later.

*Employer Reinstatement Obligations*

56. If an employee has met the requirements for reinstatement, his or her former employer has an affirmative obligation to reemploy the employee subject only to very limited exceptions. ***Failure to reinstate an individual following a period of military service is one of the most common complaints under USERRA***.

57. For employees who have served 91 days or more of military service, the employer's reinstatement obligations are very similar. *USERRA* requires employers to promptly reemploy individuals returning from military service of 91 days or more in a position that he or she would have attained if continuously employed, so long as the individual is qualified for the job or can become qualified after reasonable efforts by the employer to qualify the person. If the individual cannot become qualified for the position he or she would have attained, the employer is obligated to reemploy that individual in his or her former position, or in a position of equivalent seniority, status, and pay, so long as the individual is qualified for the job or could become qualified after reasonable efforts by the employer to qualify the individual. Those employees serving 91 days or more of military service who cannot qualify for the position they would have attained, their former positions, or a position of equivalent seniority, status, and pay must be placed in a position of like seniority, status and pay for which they are qualified to perform, with full seniority.

*Protection from Discharge or Discrimination*

58. Employees reemployed after a military leave of 181 days or more may not be discharged without cause for one year after the date of reemployment. Additionally, an employee who is reemployed after a military leave of 30 days but less than 180 days may not be discharged without cause for six months after the date of reemployment. **Courts have held that discriminatory motive may be reasonably inferred from a variety of factors including**

*proximity in time* between the employee's military activity and the adverse employment action.

59. If an employee's past, present or future military obligations are a substantial or motivating factor in an employer's adverse employment action against that employee, the employer has violated *USERRA* unless it can prove that it would have taken the same action regardless of the employee's military obligations. If the employee meets this burden, the burden shifts to the employer to uniformed services must be a "motivating factor" in the employer's actions or conduct. The initial burden of proof of discrimination or retaliation rests with the claimant alleging discrimination. The claimant must first establish that his or her protected activities or status as a past, present or future service member was a motivating factor in the adverse employment action. The claimant must also prove the elements of a violation; membership in a protected class (*e.g.*, past, present or future affiliation with the uniformed services); an adverse employment action by the employer or prospective employer; and a causal relationship between the claimant's protected status and the adverse employment action (the "motivating factor"). ***The claimant is not required to provide direct proof of employer animus; intent to discriminate or retaliate may be established through circumstantial evidence***.

60. After the claimant establishes the elements of an alleged violation, the employer may avoid liability by proving by a preponderance of the evidence that the claimant's military activities or status was not a motivating factor in the adverse employment action. At this stage, the employer carries the burden to affirmatively prove that it would have taken the action anyway, without regard to the employee's protected status or activity.

14

*Enforcement and Remedies*

61. Employers can be sued by the government or by employees under *USERRA. USERRA* complaints may be filed electronically on the DOL's website. Based on the Veterans' Benefits Improvement Act of 2008 ("VBIA 2008"), there is "no limit on the period for filing" a complaint or claim under *USERRA*. As for remedies, *USERRA* provides for the recovery of liquidated damages for a willful violation of the Act. Willfulness is not defined by the statute; although, courts generally use the same willfulness standard applied under the Age Discrimination in Employment Act.

62. In *Duarte v. Agilent Technologies Inc.*, a federal court ordered an employer to pay a former employee almost $385,000 in lost wages and benefits for illegally firing him several months after he returned from military service for violating *USERRA*. However, because the employer decided to terminate the employee based on an exercise of business judgment in response to the company's financial hardship, the court declined to award punitive damages. In *Serricchio v. Wachovia Securities*, a federal district court awarded approximately $779,000 in back pay, damages, and attorneys' fees in a case that involved an Air Force reservist and civilian financial adviser who was called to active duty in September 2001 and was not restored to his previous pay after returning from active duty.

63. While an employer is generally not required to provide a reason for terminating an employee and may do so for any or no reason, certain reasons and activities are "protected", *i.e.*, the law will protect the employee if the reason falls into an exception to the "at-will" employment doctrine. This is a clear example of such an exception, when an ***employee's military service was a substantial or motivating factor in the adverse employment action*** taken by the employer.

WHEREFORE, Plaintiff, Major Schafer, respectfully demands judgment in his favor and against Defendants, and seeks all appropriate remedies under *USERRA* & *PMAA* and such other relief as the Court shall deem appropriate.

## COUNT II

### *USERRA* & *PMAA* - RETALIATION
### (as to the City of Allentown, Mayor O'Connell (frmr) and HR Director Melony Sallie-Dosunmu (frmr))

64. Paragraphs 1 through 63 are incorporated by reference as if fully set forth herein.

65. The acts, failures to act and conduct of Defendants set forth above constitute retaliation against Major Schafer for exercising his rights under *USERRA* & *PMAA*.

WHEREFORE, Plaintiff, Major Schafer, respectfully demands judgment in his favor and against Defendants, and seeks all appropriate remedies under *USERRA* & *PMAA* and such other relief as the Court shall deem appropriate.

## COUNT III

### SECTION 1983
### (as to the City of Allentown, Mayor O'Connell (frmr) and HR Director Melony Sallie-Dosunmu (frmr))

66. Paragraphs 1 through 65 are incorporated by reference as if fully set forth herein.

67. Under *42 U.S.C. §1983*, a citizen may be awarded monetary damages if the government violates his or her civil rights. In this context, "civil rights" means any right protected by the *U.S. Constitution* or any federal law, including a property right in an employment position. Major Schafer had a property right and interest in his position as a City of Allentown employee and is properly recognized as a civil right under the *14th Amendment* to the *U.S. Constitution*.

68. A plaintiff may proceed with a *Section 1983* lawsuit against individual defendants where a plaintiff demonstrates an individual defendant's "personal involvement in the alleged wrongs." *See, e.g.   Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015)(*quoting Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)).

69. Based upon Major Schafer's personal knowledge and experience, and pursuant to the Home Rule Charter, both Defendants O'Connell and HR Director Meloney Sallie-Dosunmu were personally and directly involved in Major Schafer's discriminatory and retaliatory termination.

70. Pursuant to *Sections 308 G., L., and N.* of the *Home Rule Charter*, titled *Powers and Duties of the Mayor*, among other powers and duties of the City of Allentown Mayor, the Mayor has the power and duty to:

> *A. Execute, enforce and obey the ordinances of the City, the laws of the Commonwealth of Pennsylvania and the United States of America.*
>
> *G. Direct and supervise the administration of all departments, offices and agencies of the City, except as otherwise provided by the Charter or by law.*
>
> *I. Ensure that all laws, provisions of this Charter and acts of City Council are faithfully executed.*
>
> *J. Be responsible for the establishment and development of the administrative policy.*
>
> *N. Appoint, suspend or remove any City employee, except as otherwise provided by this Charter or by law, and unless otherwise provided, be responsible for the employment of personnel necessary for the effective operation of city government.*

71. Pursuant to the *Home Rule Charter, Section 307 N*., the Mayor on his own behalf and on behalf of the City was personally involved and responsible for Major Schafer's termination.

72. "[T]o establish municipal liability under § 1983, [a plaintiff] must show that they were deprived of 'rights, privileges, or immunities secured by the Constitution and laws,' and that the deprivation of those rights was the result of an official government policy or custom." *Mulholland v. Gov't Cty. of Berks, PA*, 706 F.3d 227, 238 (3d Cir. 2013)(*quoting Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (*citing Monell*, 436 U.S. 658)).

73. Major Schafer's civil rights were violated when the City terminated his employment.

74. Through the City's policy and custom of discriminating and retaliating against those individuals taking military leave from the City pursuant to *USERRA* and *PMAA*, including Major Schafer, the City deprived Major Schafer of his right in and privilege to his position with the City, secured by the United States Constitution, laws and the City's own Home Rule Charter.

WHEREFORE, Plaintiff, Jason Schafer, respectfully demands judgment in his favor and against Defendants, and seeks all appropriate remedies under *Section 1983* and such other relief as the Court shall deem appropriate.

## COUNT IV

### *U.S. CONSTITUTION – 14TH AMENDMENT*

**(as to the City of Allentown, Mayor O'Connell (frmr) and HR Director Melony Sallie-Dosunmu (frmr))**

75. Paragraphs 1 through 74 are incorporated by reference as if fully set forth herein.

76. The Due Process Clause of the *14th Amendment* guarantees individuals procedural protections from governmental actions that deprive those individuals of their property interests in certain entitlements and benefits.

77. In every case where a protected property interest is at stake, the *U.S. Constitution* requires, at a minimum, some kind of notice and an opportunity for the individual to be heard before the property right is taken away from that individual. *Dusenbery* v. *U.S.,* 534 U.S. 161 (2002).

78. Without the ability to state the fact any clearer, Major Schafer didn't receive **any notice, of any kind, whatsoever**, in violation of both the Home Rule Charter and the *14th Amendment* to the *U.S. Constitution*.

79. The City violated Major Schafer's right to procedural due process under the *14th Amendment* to the *U.S. Constitution* when it terminated him from his position as a City of Allentown employee.

80. Pursuant to Ordinance No. 14719, File of City Council, Bill No. 11 – 2009, March 4, 2009, Amending Article 140, the Personnel System, by adopting a new personnel code, the City of Allentown operates under a Home Rule Charter adopted by the Allentown voters on April 23, 1996 (the "Personnel Code").

81. Pursuant the *Personnel Code, Article 140.18* titled *Discharge, Discipline and Work Rules*, was created "For the benefit and protection of all employees, the City and the City's residents, certain rules with regard to proper employee conduct are necessary." *Article 140.18, Personnel Code*.

82. Further, *Article 140.18* of the *Personnel Code* states and specifically mandates that

> *Disciplinary action will be progressive; verbal reprimand, written reprimand, time off without pay, discharge. Progressive disciplinary action is not limited to violations of only one work rule;…Progressive discipline may also "skip" less severe disciplinary action if the violation warrants, even if there have been no previous disciplinary action taken against the employee. Any discipline other than a reprimand must be reviewed with the Human Resource Manager or designee.*

> *Managers/Supervisors are required to fully document all disciplinary measures and the incidents that give rise to the discipline. A copy of all such discipline must be provided to Human Resources.*

A non-exhaustive list of 28 categories follow the above, as examples that will constitute grounds for disciplinary actions, up to and including immediate discharge, none of which were ever brought to Major Schafer's attention in any forum or format.

83.  At no point in Major Schafer's employment with the City was he ever even once made aware of any discipline or even of the potential for discipline regarding any of the categories above, or any other disciplinary categories, for that matter.

84. Major Schafer, through the Home Rule Charter, as a City of Allentown employee, was entitled to the benefits provided by the Home Rule Charter one of which, if necessary, was the right to receive progressive discipline, a form of due process clearly laid out in the Home Rule Charter.

85. Major Schafer was not provided with any form of progressive discipline or any other form of due process prior to being terminated as a direct result of giving notice of pending Orders.

86. An employee has a property interest when a written or implied contract states that the employee has a property interest, as noted by the City's Home Rule Charter.

87. At no point was Major Schafer ever provided with any opportunity to learn about and/or address the terms and conditions of his employment and ultimate termination. There was no written or verbal warning and no progressive discipline whatsoever, contrary to Major Schafer's own experience when involved in other employees' discipline/termination, informing Major Schafer of the disparate treatment he specifically received as a direct result and consequence of his active military status.

88. As a government employee with the City, Major Schafer had a constitutional right to due process and a fair hearing, neither of which were granted, let alone even contemplated, clearly violating Major Schafer's protection under 14th Amendment, stripping Major Schafer of his property interest in his job while ignoring Major Schafer's right to due process.

WHEREFORE, Plaintiff, Major Schafer, respectfully demands judgment in his favor and against Defendants, and seeks all appropriate remedies under the *14th Amendment* of the *U.S. Constitution*, and such other relief as the Court shall deem appropriate.

Respectfully submitted,

Date: <u>November 10, 2022</u>                    By: <u>JAJ2397                                      </u>

Jared A. Jacobson - Pa. Atty. Id. No. 201382
**JARED JACOBSON LAW, LLC**
290 Avon Road, J404
Devon, PA 19333
917-856-6167 (phone)
jjacobson@jaredjacobsonlaw.com

*Attorney for Plaintiff, Major Jason Schafer*

# <u>V E R I F I C A T I O N</u>

I, Jason Schafer hereby state that the facts above set forth are true and correct, or are true and correct to the best of my knowledge, information and belief and that I expect to be able to prove the same. I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Date: November 10, 2022

Jason Schafer

# <u>Exhibit A</u>

<u>City of Allentown, Home Rule Charter, Chapter C, Article III, Section 308, Powers and Duties</u>

<u>of the Mayor</u>

# **Exhibit B**

City of Allentown Municipal Employee Pension Plan Agreement, dated January 21, 1998

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

MAJOR JASON SCHAFER                        :        CIVIL ACTION
                                           :
                          v.               :
City of Allentown, Mayor Ray               :
O'connell (Feme) & HR Director Melony      :
Sallie - DOSUNMU (Feme)                    :   NO. 5:22-cv-04518

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.                          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.                                                                   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)                                                                      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (✓)

11/10/22              JARED A. JACOBSON, Esq.      Plaintiff, Major Jason Schafer
**Date**                **Attorney-at-law**          **Attorney for**

(917) 856-6167          N/A                         jjacobson@jaredjacobsonlaw.com
**Telephone**           **FAX Number**                **E-Mail Address**

(Civ. 660) 10/02

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _Northhampton County, Pennsylvania_

Address of Defendant: _City of Allentown, Lehigh County, Mayor O'Connell (Frmr e) - Lehigh Cty_

Place of Accident, Incident or Transaction: _City of Allentown - 435 Hamilton St. Allentown, PA 18101_

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes ☐   No ☒

Does this case involve multidistrict litigation possibilities?     Yes ☐   No ☒

*RELATED CASE, IF ANY:* _N/A_

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?     Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ✔ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ✔ All other Federal Question Cases
    (Please specify) _USERRA, Section 1983, 14th Amendment U.S. Constitution_

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, _Jared A. Jacobson, Esq._, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs.

☐ Relief other than monetary damages is sought.

DATE: _11/10/22_     _Jared A. Jacobson, Esq._          _201382_
                          Attorney-at-Law                        Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _11/10/22_     _Jared A. Jacobson, Esq._          _201382_
                          Attorney-at-Law                        Attorney I.D.#

CIV. 609 (5/2012)

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I.

**(a) PLAINTIFFS**
MAJOR JASON SCHAFER

**DEFENDANTS**
① City of Allentown
② Mayor RAY O'CONNELL (FRMR)
③ HR Director Maloney Sallie-Dosunmu (FRMR)

**(b)** County of Residence of First Listed Plaintiff   NORTHHAMPTON
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   LEHIGH
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
JARED JACOBSON LAW, LLC
144 N. NARBERTH AVE. #502
NARBERTH, PA 19072

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**        **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane     ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product           Product Liability |  |           28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |           Liability     ☐ 367 Health Care/ |  |  | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &           Pharmaceutical |  | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|        & Enforcement of Judgment |           Slander           Personal Injury |  | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'           Product Liability |  | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |           Liability     ☐ 368 Asbestos Personal |  | ☐ 840 Trademark |        Corrupt Organizations |
|        Student Loans | ☐ 340 Marine           Injury Product |  |  | ☐ 480 Consumer Credit |
|        (Excludes Veterans) | ☐ 345 Marine Product           Liability |  | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |           Liability   **PERSONAL PROPERTY** | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|        of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) |        Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending           Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |           Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal           Property Damage           Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |           Injury     ☐ 385 Property Damage | ☐ 740 Railway Labor Act |  | ☐ 895 Freedom of Information |
|  | ☐ 362 Personal Injury -           Product Liability | ☐ 751 Family and Medical |  |        Act |
|  |        Medical Malpractice |        Leave Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**     **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement        or Defendant) |        Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting     ☐ 463 Alien Detainee        Income Security Act | ☐ 871 IRS—Third Party |        Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment   ☐ 510 Motions to Vacate |        26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/           Sentence |  |        State Statutes |
| ☐ 245 Tort Product Liability |        Accommodations   ☐ 530 General |  |  |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities-   ☐ 535 Death Penalty |  |  |
|  |        Employment     **Other:** | **IMMIGRATION** |  |  |
|  | ☐ 446 Amer. w/Disabilities-   ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |
|  |        Other     ☐ 550 Civil Rights | ☐ 465 Other Immigration |  |
|  | ☐ 448 Education   ☐ 555 Prison Condition           Actions |  |  |
|  |     ☐ 560 Civil Detainee - |  |  |
|  |           Conditions of |  |  |
|  |           Confinement |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Uniformed Services Employment + Re-Employment Act (USERRA) 38 USC §§ 4301-4333; Sec. 1983; US Constitution
Brief description of cause:
Discrimination/Retaliation-Employment                                               14th Amendment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$10,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*     JUDGE _____   DOCKET NUMBER _____

DATE _____          SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**