**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MAJOR JASON SCHAFER** | : | |
| Plaintiff | : | |
| | : | **CIVIL ACTION NO.**: **5:22-cv-04518** |
| v. | : | |
| | : | |
| **CITY OF ALLENTOWN, MAYOR** | : | |
| **RAY O'CONNELL (FRMR) &** | : | |
| **HR DIRECTOR MELONEY SALLIE-** | : | |
| **DOSUNMU (FRMR)** | : | **JURY TRIAL DEMANDED** |
| Defendants | : | |

**PLAINTIFF MAJOR JASON SCHAFER'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S**
**AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.     PROCEDURAL HISTORY ..................................................................... 3

II.    FACTUALBACKGROUND .................................................................. 3

III.   QUESTIONS PRESENTED .................................................................. 4

IV.    ARGUMENT ……......................................................................................... 4

     A.  Legal Standard ................................................................................. 4

     B.  Major Schafer's Section 1983 Claim (Count III) Should Not be
         Dismissed for Failing to State a Claim ................................................. 6

     C.  Major Schafer's "Violation of Fourteenth Amendment of the
         United States Constitution" Claim (Count IV) Should Not be
         Dismissed for Failing to State a Claim ................................................. 7

     D.  Major Schafer's Wrongful Discharge Claim (Count V) Should
         Not be Dismissed for Failing to State a Claim …………………………… 9

     V.     CONCLUSION ........................................................................... 16

## I.     PROCEDURAL HISTORY

On November 10, 2022, Plaintiff, Major Jason Schafer ("Major Schafer"), initiated an action against Defendants, City of Allentown (the "City"), Former Mayor Ray O'Connell ("Mayor O'Connell"), and Former HR Director, Meloney Sallie-Dosunmu ("Ms. Sallie-Dosunmu"). (ECF 1). The City and Ms. Sallie-Dosunmu shall hereinafter be referred to collectively as "Defendants."

Major Schafer filed an Amended Complaint on November 27, 2022, bringing claims for Discrimination and Retaliation in violation of Uniformed Services Employment and Re-Employment Act, 38 U.S.C. § 4301, *et seq*. ("USERRA") and the Pennsylvania Military Leave of Absence Act, 51 Pa. C.S. § 7301, *et seq*. ("PMAA") (Counts I and II), Section 1983 procedural due process violation (Count III), violation of the Fourteenth Amendment to the United States Constitution (Count IV) and Wrongful Discharge in Violation of Pennsylvania Public Policy (Count V). ("ACOM") (ECF 3). Defendants filed a Partial Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Def. MTD") (ECF 7-1).

## II.    FACTIUAL BACKGROUND

It's important to note that while it is not inaccurate to refer to Major Jason Schafer as "Mr. Schafer", it is certainly telling of Defendants' mindset referring to Major Schafer using "Mr." rather than "Major", when responding to Major Schafer's military discrimination/retaliation claims under USERRA and PMAA, among other laws implicated.

Plaintiff, Major Jason Schafer hereby incorporates Section "IV. FACTUAL BACKGROUND" from Major Schafer's Amended Complaint (ECF 3), as if contained herein and made a part hereof.

## III.   QUESTIONS PRESENTED

**A. WHETHER MAJOR SCHAFER'S SECTION 1983 PROCEDURAL DUE PROCESS CLAIM (COUNT III) MUST BE DISMISSED FOR FAILING TO STATE A CLAIM?**

**Suggested Answer: No.**

**B. WHETHER MAJOR SCHAFER'S CLAIM OF VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (COUNT IV) MUST BE DISMISSED FOR FAILING TO STATE A CLAIM?**

**Suggested Answer: No.**

**C. WHETHER MAJOR SCHAFER'S WRONGFUL DISCHARGE CLAIM (COUNT V) MUST BE DISMISSED FOR FAILING TO STATE A CLAIM?**

**Suggested Answer: No.**

## IV.   ARGUMENT

### A. Legal Standard

On consideration of a 12(b)(6) motion to dismiss, all the well-pleaded allegations of the complaint must be accepted as true. *Erickson v. Pardus,* 551 U.S. 89, 93-94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). The factual allegations in Plaintiff's Complaint need not do more than "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiff need only "make a 'showing' . . . of an entitlement to relief" that is something more than "a blanket assertion." *Smith v. Sullivan,* 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008).

This standard 'does not impose a probability requirement at the pleading stage,' but 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the

necessary element.  *Twombly,* 550 U.S. at 556.  *Twombly* does not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "When read in the light most favorable to the plaintiff, a pleading that provides sufficient facts to "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" meets the required level of "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); see also *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Nothing in *Twombly, Iqbal,* or *Fowler* altered the "fundamental underpinnings" of the Rule 12(b)(6) standard of review:

> Federal Rule of Civil Procedure 8 still requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Further, the court must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Finally, the court must determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.

*Whambush v. City of Philadelphia,* 747 F. Supp. 2d 505, 512 (E.D. Pa. 2010)(citing *Phillips v. Cnty. of Allegheny, 5*15 F.3d 224, 233 (3d Cir 2008); *Buck v. Hampton Twp. Sch. Dist.,* 452 F. 3d 256, 260 (3d Cir. 2006), and *Pinker v. Roche Holdings Ltd.,* 292 F. 3d 361, 374 n.7 (3d Cir. 2002)).

The Third Circuit has clearly stated that while the formulaic recitation of the elements of a cause of action is not sufficient, allegations of fact sufficient to raise "a reasonable expectation" that discovery will reveal necessary elements of the claims, are all that is required to defeat a Motion to Dismiss at the pleadings stage.  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

B. **Major Schafer's Section 1983 Claim (Count III) Should Not be Dismissed for Failing to State a Claim**

A plaintiff may proceed with a *Section 1983* lawsuit against individual defendants where a plaintiff demonstrates an individual defendant's "personal involvement in the alleged wrongs." *See, e.g. Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015)(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). Based upon Major Schafer's personal knowledge and experience, and pursuant to the Home Rule Charter, the relevant portions of which are attached to Major Schafer's Amended Complaint and previously submitted (ECF 1-1), both Defendants O'Connell and HR Director Meloney Sallie-Dosunmu were personally and directly involved in Major Schafer's discriminatory and retaliatory termination.

"[T]o establish municipal liability under § 1983, [a plaintiff] must show that they were deprived of 'rights, privileges, or immunities secured by the Constitution and laws,' and that the deprivation of those rights was the result of an official government policy or custom." *Mulholland v. Gov't Cty. of Berks, PA*, 706 F.3d 227, 238 (3d Cir. 2013)(*quoting Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (*citing Monell*, 436 U.S. 658)). Major Schafer's civil rights were clearly violated when the City terminated his employment because they got sick of him taking military leave.

Contrary to what Defendants have suggested, at no time does Major Schafer claim he is *not* an at-will employee or that he has a guaranteed right to continued employment under and any and all circumstances for the rest of his life. Nor does Major Schafer claim that he has an employment agreement.

As Defendants correctly state, an offer letter does not offer a guaranteed duration of employment, *however*, an offer letter also may not be used as a shield to circumvent federal statutes, state statutes and common laws to strip Major Schafer of the legal protections and

6

remedies that **<u>are</u>** guaranteed by those laws as they argue to do here.

Therefore, Major Schafer would respectfully request that this Court deny Defendants' Motion to Dismiss Count III.

### C. Major Schafer's "Violation of Fourteenth Amendment to the United States Constitution" Claim (Count IV) Sufficiently States a Claim Upon Which Relief Can be Granted

The Due Process Clause of the 14th Amendment guarantees individuals procedural protections from governmental actions that deprive those individuals of their property interests in certain entitlements and benefits. *U.S. Constitution, 14th Amendment*. In every case where a protected property interest is at stake, the U.S. Constitution requires, at a minimum, some kind of notice and an opportunity for the individual to be heard before the property right is taken away from that individual. *Dusenbery v. U.S.*, 534 U.S. 161 (2002). Major Schafer is not claiming he should be guaranteed his job without exception, only the procedural protections from governmental action guaranteed by the Due Process Clause of the 14th Amendment, United States Constitution.

Pursuant to Ordinance No. 14719, File of City Council, Bill No. 11 – 2009, March 4, 2009, Amending Article 140, the Personnel System, by adopting a new personnel code, the City of Allentown operates under a Home Rule Charter adopted by the Allentown voters on April 23, 1996 (the "Personnel Code"). Pursuant the Personnel Code, Article 140.18 titled Discharge, Discipline and Work Rules, was created "For the benefit and protection of all employees, the City and the City's residents, certain rules with regard to proper employee conduct are necessary." *Article 140.18, Personnel Code*.

*Article 140.18* of the *Personnel Code* states and specifically mandates that

> *Disciplinary action will be progressive; verbal reprimand, written reprimand, time off without pay, discharge. Progressive disciplinary action is not limited to violations of only one work rule;…Progressive discipline may also "skip" less severe disciplinary action if the violation warrants, even if there have been no previous disciplinary action taken against the employee. Any discipline other than a reprimand must be reviewed with the Human Resource Manager or designee.*
>
> *Managers/Supervisors are required to fully document all disciplinary measures and the incidents that give rise to the discipline. A copy of all such discipline must be provided to Human Resources.*

A non-exhaustive list of 28 categories follow the above, as representative grounds for disciplinary actions, up to and including immediate discharge, none of which were ever brought to Major Schafer's attention in any forum or format. At no point do Defendants even deny the fact that Major Schafer received no notice, of any kind, whatsoever, contrary to what both the Home Rule Charter and the 14th Amendment to the U.S. Constitution require. Defendants violated Major Schafer's right to procedural due process under the 14th Amendment to the U.S. Constitution when it terminated him from his position as a City of Allentown employee without following the procedural safeguards enacted into law by and for that very same Defendant City of Allentown and its representatives.

At no point in Major Schafer's employment with the City was he ever even once made aware of any discipline or even of the potential for discipline regarding any of the categories above, or any other disciplinary categories, for that matter. Major Schafer, through the Home Rule Charter, as a City of Allentown employee, was entitled to the benefits provided by the Home Rule Charter one of which, if necessary, was the right to receive progressive discipline, a form of due process clearly laid out in the Home Rule Charter. Major Schafer was not provided with any form of progressive discipline or any other form of due process prior to being terminated as a direct result of giving notice of pending Orders. An employee has a property interest when a written

or implied contract states that the employee has a property interest, as noted by the City's Home Rule Charter.

Accepting Defendants' argument as true, that the City's Home Rule Charter is simply a guide or recommendation, and further that those City of Allentown employees, third-party vendors, and residents, all of which have been and are currently operating pursuant to the Home Rule Charter, have been doing so ***not*** because they are required, but for some other reason and instead should feel free to adopt the City of Allentown's position - that the Home Rule Charter does not apply.

Alternatively, Major Schafer would respectfully ask that this Court reject Defendants' argument and deny Defendants' Motion to Dismiss this Count IV as well.

### D. **Major Schafer's Wrongful Discharge Claim (Count V) Must Not be Dismissed and Sufficiently States a Claim Upon Which Relief Can be Granted**

In the case of *Hamovitz v. Santa Barbara Applied Research, Inc*. (W.D. Pa. October 19, 2010) (2010 U.S. Dist. LEXIS 110937), the court allowed the plaintiff to recover tort damages for wrongful termination under the public policy exception to at-will employment in Pennsylvania even though a statute existed that provided a remedy for retaliation, because the court found that the statute in question did not provide an exclusive remedy for retaliation AND the remedy that was provided under common law did not exist under the federal or state statute and to not allow such an exception would have denied the *Hamovitz* plaintiff of his rights.

The plaintiff in *Hamovitz* argued that he suffered emotional distress, embarrassment, and humiliation resulting from defendants' wrongful conduct. As USERRA did not provide any meaningful route to compensation for the types of alleged losses, and based on the language of USERRA, plaintiff's remedies under USERRA did not appear to be exclusive and he was entitled

to seek additional tort damages, including compensatory damages for emotional distress, embarrassment, and humiliation and punitive damages under Pennsylvania common law.

The *Hamovitz* court itself recognized that the Pennsylvania Superior Court has consistently recognized the existence of the public policy exception to the at-will doctrine of employment citing *Rutherfoord v. Presbyterian-Univ. Hosp.*, 417 Pa. Super. 316, 612 A.2d. 500, 506 n.4 (Pa. Super. 1992) ("The public policy exception to the at-will doctrine of employment has been consistently recognized in Pennsylvania.") *Id*. Sources from which public policy is drawn may include legislation, administrative rules, regulations, and judicial decisions. *Cisco v. United Parcel Services, Inc.*, 476 A.2d at 1342-43.

Courts applying Pennsylvania law have allowed lawsuits for wrongful termination on public policy grounds only when the dismissal was itself based on an unlawful ground or otherwise subverted the law as recognized in the Commonwealth, for example by punishing plaintiff for exercising rights or fulfilling duties granted or imposed by statute. *Hamovitz*, *11.

In *Hamovitz*, the court found that the statute in question was never designed or intended to provide a comprehensive or exclusive remedy for wrongful termination, but rather it only provided for a specific remedy for retaliation under that specific statute and that statute only unless otherwise preempted by those who created the statute which they found not to be the case. Therefore, the *Hamovitz* court determined that the plaintiff's claim for wrongful termination based on a violation of public policy was not only <u>not precluded</u> by the statute generally, but further that the plaintiff was entitled to seek tort damages in addition to any remedies provided by the statute.

The question presented in Major Schafer's case, as it relates to the holding and the *Hamovitz* Court's rationale in reaching that holding, as accurately anticipated by Defendants,

Major Schafer would agree that the *Hamovitz* analysis should be an important focal point of this Court's analysis considering the same question and while not controlling on this Court, applying the same rationale, should reach the *Hamovitz* holding allowing Major Schafer to proceed on his Wrongful Termination claim.

Defendants note that "it is well-established that "terminated employees may invoke the public policy exception **only in the absence of any applicable statutory remedy'"** (Def MTD p.12) (ECF 7-1). Accepting Defendants' proposition as true, Major Schafer would clearly be without significant statutory remedies otherwise contained in Pennsylvania's common law.

The Pennsylvania Supreme Court has made it clear that a plaintiff may bring a claim for wrongful termination if his or her termination of employment violated the public policy of Pennsylvania. *McLaughlin v. Gastrointestinal Specialists Inc.,* 750 A.2d 283 (Pa. 2000). To successfully state a claim for wrongful termination, an at-will employee "must allege that some public policy of this Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee." *Id*. At 289. In application, the public policy exception "has been limited to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) *discharges an employee when specifically prohibited from doing so by statute*." *Tanay v. Encore Healthcare*, LLC, 810 F. Supp. 2d 734, 738 (E.D. Pa. 2011) (emphasis added

It shall be a defense to an action under this section if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pre-textual. To be clear, *at no time has anyone at any time*

*communicated to Major Schafer any reason for his termination*, let alone a non-pretextual reason.

Defendants' argument that the *Hamovitz* court's rationale is or even should be limited by this Court to a *failure to hire* set of circumstances instead of a *termination* fails for several reasons. To begin with, Defendants argument states that "the court **recognized** that plaintiff **was never employed by** either Defendant." Def MTD p.13-14 (ECF 7-1) (emphasis added). Major Schafer does not dispute this fact, however, because the *Hamovitz* court simply recognized this fact as Defendants correctly point out does not make the fact itself determinative or even material as Defendants would suggest.

In fact, the *Hamovitz* court went further, as Defendants again accurately point out, "given the unique facts and circumstances of this particular case, the Court finds and rules that the Pennsylvania Supreme Court would recognize a refusal to hire claim in violation of public policy based on grounds covered by the PMAA." Def MTD p.14. (ECF 7-1). However, because the *Hamovitz* court predicted that the Pennsylvania Supreme Court would recognize a refusal to hire claim, that prediction does not in any way suggest that by doing so it would be at the expense of and therefore excluding a current employee's claim due to their employment status. Further, while the *Hamovitz* court had the opportunity while addressing the topic, it does actually stop short of predicting the limitation Defendants imply into the court's decision and does not exist.

Moreover, it's very rare to see federal statutes, state statutes, or case law interpreting the same in the employment discrimination/retaliation space, drawing a distinction, let alone a meaningful one, based on whether or not an individual is employed at the time of an adverse employment action so as to deprive a plaintiff of rights otherwise available as Defendants try to

do here. In fact, it's unnecessary given that the analysis as to damages, financial, compensatory or otherwise, which certainly remains an important component of the analysis in either case - whether work discrimination prevents someone from getting a job or from keeping one. It's at *that* time the parties and this Court should be focusing on a discrimination victim's duration of employment, as a proper measure of financial damages *e.g.*, 10 year employment duration v. having never been hired. While Major Schafer appreciates Defendants' attempt, he also understands that this distinction is artificial and being utilized as a *red herring*.

Major Schafer agrees with Defendants' assertion that a plaintiff may not avail him/herself of the public policy exception when a statutory remedy exists. Major Schafer disagrees that any of the statutes pled in his case do in fact provide for multiple categories of damages that do not even appear in the statutes Defendants would suggest fully compensate Major Schafer for his suffering. Upon a simple reading of both USERRA and PMAA, neither of them allow a plaintiff to recover for compensatory or punitive damages.

Defendants' adverse employment action against Major Schafer was intentional causing Major Schafer severe emotional distress as well as major lost financial opportunity suffered and continues to suffer loss of the increased value of his pension as well as. Major Schafer acknowledges that certain financial damages may be addressed through his USERRA and PMAA claims, however, it's clear that compensatory and punitive damages do not. There is clearly nothing in the statutory language of USERRA that suggests that any state tort law causes of action are pre-empted by USERRA, including any of the remedies contained therein.  Were this Court to accept Defendants' argument that a Wrongful Termination common law claim in Pennsylvania is pre-empted by USERRA and/or PMAA in its entirety, which Major Schafer does not accept, Major

Schafer would respectfully ask the Court to distinguish and carve out any remedies present under Pennsylvania's Wrongful Termination Claim from those otherwise available under either USERRA and/or PMAA and believe this Court would come to the conclusion that no such remedies do in fact exist and would leave Major Schafer without any common law remedies to redress the discrimination and retaliation he suffered.

It is a curious argument that Defendants make suggesting that Major Schafer is trying to avail himself of identical remedies under both statutes and common laws which Major Schafer's counsel agrees, that is not permitted. If in fact Major Schafer were trying to do that and if that were even possible, Major Schafer would concede to Defendants' argument. However, because identical remedies, or even those remedies designed to redress the same wrong do not even exist in USERRA or PMAA as Defendants would have this court believe, it's not possible for Defendants to argue that a law or remedy could pre-empt something that doesn't exist. To be clear, neither USERRA, PMAA, any other statute plead by Major Schafer of which there were none, or the United States Constitution 14th Amendment, provide any remedy to which Major Schafer is or even could claim he is already entitled based on such statutes, *i.e.*, he is not "double dipping" as no such equivocal remedies do in fact exist which is the purpose Major Schafer amended his initial complaint to add a Wrongful Termination Claim as the previous Counts were insufficient.

The *Hamovitz* court was not alone in applying it's rationale as to why it offered that plaintiff protection under similar circumstances to those that exist in Major Schafer's case. In *Kane v. Town of Sandwich*, 123 F.Supp.3d 147,149 (D. Mass 2015), another USERRA case contemplating the preemption question and whether state law tort claims were available to the plaintiff, citing *Hamovitz*, the court reasoned that some federal courts have interpreted § 4302(a) to mean that

"Congress did not intend to replace any common law remedy that might also be available to plaintiff" *Hamovitz*, at *7 (*quoting Slater v. Verizon Communications, Inc.,* No. 04-cv-00303-SM, 2005 DNH 23, 2005 WL 488676, at *4 (D.N.H. 2005)) (internal quotation mark omitted); *see also Reyes v. Goya of Puerto Rico, Inc.*, 632 F. Supp. 2d 142, 145 (D.P.R. 2009), a case decided prior to *Hamovitz* and reaching the same conclusion (noting that "***nothing in the statutory language suggests that state tort law causes of action are pre-empted by USERRA***") (*emphasis added*) These courts believe that "the clear language of Section 4302(a) protects Plaintiff's right to seek additional relief under common law" because the "rights or benefits" in § 4302 refer not only to substantive employment rights and benefits, but also "the right to other causes of action." *Mills v. E. Gulf Coal Preparation Co., LLC*, No. 08-cv-00260-ICB, 2010 U.S. Dist. LEXIS 60767, 2010 WL 2509835, at *8 (S.D.W. Va. June 18, 2010); *see Williams v. Sysco San Francisco, Inc.,* No. 10-cv-03760-MEJ, 2013 U.S. Dist. LEXIS 49124, 2013 WL 1390695, at *4 (N.D. Cal. Apr. 4, 2013) (noting that "[b]y its plain terms, USERRA leaves open the potential for a plaintiff to assert state claims that provide greater rights or benefits than those set forth in USERRA" and "[b]y intentionally allowing a plaintiff to assert additional state claims, USERRA necessarily also leaves open the possibility of additional remedies or damages attendant to such claims, including punitive damages").

In *Williams*, while not binding on this Court, it is another example of a case involving the federal statute USERRA contemplating the identical preemption question and whether a plaintiff may also avail himself of state claims providing for remedies not contained in the statute. In *Williams*, after carefully considering the parties' authorities and based on its review of the statutory language, the *Williams* court found the reasoning in *Hamovitz* to be sound, noting that by its plain

terms, USERRA leaves open the potential for a plaintiff to assert state claims that provide greater rights or benefits than those set forth in USERRA. *Id.* *12

## IV.      CONCLUSION

Based on the foregoing, Major Schafer respectfully requests that this Honorable Court deny in its entirety DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, including Counts III, IV, and V with prejudice to the City of Allentown and HR Director Meloney Sallie- Dosunmu.

**JARED JACOBSON LAW, LLC**

Date: <u>January 17, 2023</u>                By: <u>/s/ JAJ7962                    </u>
                                                 Jared A. Jacobson, Esq. (PA201382)
                                                 1000 W. Valley Road, #1631
                                                 Southeastern, PA 19399
                                                 (917) 856-6167 (phone)
                                                 jjacobson@jaredjacobsonlaw.com

                                                 *Counsel for Plaintiff, Major Jason Schafer*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 17, 2023, a true and correct copy of the foregoing PLAINTIFF MAJOR JASON SCHAFER'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT was served upon the following counsel of record via the CM/ECF System:

HOFFMAN & HLAVAC
Steven E. Hoffman, Esquire Attorney I.D. No. PA 63911(shoffman@hhe-law.com)
Shanna R. Fegely, Esquire Attorney I.D. No. PA 327266 (sfegely@hhe-law.com)
1605 N. Cedar Crest Blvd., Suite 517
Allentown, PA 18104 Ph # 484-408-6001 Fax # 484-408-6018
Attorneys for Defendants City of Allentown and Meloney Sallie-Dosunmu

David  J. MacMain, Esq.
433 W. Market Street, Suite 200
West Chester,  PA. 19382
dmacmain@macmainlaw.com
Attorney for Defendant, Ray O'Connell (frmr)

/s/ JAJ7962
Jared A. Jacobson, Esq.